UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL D. JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-14727** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "I" (4)** |

## REPORT AND RECOMMENDATION

### I.   Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Michael D. Jackson's claim for Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(B), for the submission of Proposed Findings and Recommendations.

### II.   Factual Summary

On September 15, 2016, the claimant, Michael D. Jackson ("Jackson"), filed this appeal of the denial of Disability Insurance Benefits. R. Doc. 1. Jackson is a 5' 11" fifty-seven-year-old male with two years of college. He has received some specialized training as an automotive technician and has previous work experience with the United States Coast Guard as a Yeoman First Class, mainly working as a network manager and a property manager. R. Doc. 7-6, Tr. 149-159; R. Doc. 7-2, Tr. 51-54. He complains that his disability began on January 31, 2008 because of a compressed disc, mental condition, back injury, depression, chronic fatigue syndrome, arthritis, sleep apnea, hypertension, hyperlipidemia, bronchial asthma, arthritic right shoulder, and hearing loss. R. Doc. 7-3, Tr. 64-65.

Jackson filed for Disability Insurance Benefits under Title II on October 31, 2014. R. Doc. *Id.* at Tr. 70. His application was denied. R. Doc. 7-4, Tr. 73-77. Jackson then filed a request for a hearing, which took place on February 4, 2016 before Administrative Law Judge Timothy Stewart ("ALJ"). *Id.* at 79-80; R. Doc. 7-2, Tr. 34-63. Thereafter, the ALJ issued a decision finding Jackson was not disabled. R. Doc. 7-2, Tr. 11-31. That decision was affirmed by the Appeals Council. *Id.* at Tr. 1-5.

In particular, Jackson contends that the ALJ erred when he: (1) held that Jackson retained the residual functional capacity ("RFC") to perform light work subject to certain exertional limitations and (2) did not give substantial weight to Jackson's VA disability rating. R. Doc. 8, p. 4-7. In response, the Commissioner argues that the ALJ's decision is based upon substantial evidence. R. Doc. 11.

### III. **Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.     Whether the ALJ's decision that Jackson retained the residual functional capacity to perform light work subject to certain exertional limitations?**

Jackson contends that the ALJ erred in finding that he was capable of light work, with the exertional limitations of frequently climbing ramps and stairs, occasionally climbing ladders, ropes, and scaffolds, frequently balancing and occasionally stooping, kneeling, crouching or crawling. R. Doc. 8, p. 4. In support of his claim, Jackson contends that the medical records clearly show that prior to his date last insured, he was suffering from constant back pain, which required steroid injections, pain management and both narcotic pain pills and morphine to simply be managed. *Id.* He also contends that the ALJ's conclusion that his condition improved with medication is misleading and contrary to the evidence because the records actually show that he used heavy narcotics in combination to reduce the pain he was experiencing. *Id.* Jackson contends that the ALJ completely failed to consider the limitations imposed by the medication itself which would likely be significant considering that he is taking morphine, Percocet, and Flexeril in combination. *Id.* at p. 4-5.

The Commissioner contends, however, that substantial evidence supports the ALJ's RFC determination. R. Doc. 11 p. 5. The Commissioner points out that the ALJ considered Jackson's diagnostic test results which revealed mild to moderate degenerative findings at T11-T12 and L5-S1 with disc protrusion. *Id.* The Commissioner further contends that the ALJ explained how the medical records showed improvement in the reduction of Jackson's pain as a result of medication and treatment, along with his daily activities which support the ALJ's RFC determination. *Id.* at p. 6. As a result, according to the Commissioner the ALJ's RFC finding is based upon substantial evidence.

A claimant may demonstrate that his or her impairment is of sufficient severity to qualify in the event that the claimant suffers from a less severe impairment, where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy.

. . ." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (citing 42 U.S.C. § 423(d)(2)(A)). "In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4)." *Ludvico v. Astrue*, No. 08-332, 2008 WL 5134938 at *5 (W.D. Penn. Dec. 5, 2008) (citing *Stunkard v. Sec'y of Human Servs.*, 841 F.2d 57, 59 (3rd Cir. 1988)). After making that showing, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas v. Bown*, 823 F.2d 775, 777 (3d Cir. 1987).

The ALJ considered Jackson medical records predating the date last insured. He noted that in September 2012, Jackson complained of lumbar pain and reported that he previously had an epidural steroid injection of the back with radiofrequency obliteration. R. Doc. 7-2, Tr. 20. The ALJ noted that Jackson did not report any joint, neurological, or psychiatric symptoms and that on examination there was full range of motion except for flexion of the lower back. *Id.* The ALJ noted that Jackson was diagnosed with mood disorder due to his general medical condition and PTSD as well as low back pain and diabetes. *Id.*

The ALJ further noted that his pain was not adequately managed in the past but that his current level was manageable. *Id.* He noted that Jackson was found to have a service connected disability related to his ailments for which he now seeks a disability finding. *Id.* In March 2013, Jackson according to the ALJ reported that his Post Traumatic Stress Disorder was doing okay. *Id.* at Tr. 21. The opinion also indicates that when Jackson was noncompliant with checking his blood sugar levels or was not able to refill his narcotic medications, his pain and sugar levels increased. *Id.* The ALJ

noted that Jackson experienced chronic pain, referenced a trip and fall in August and other injuries he sustained. *Id.*

The ALJ noted that Jackson began swimming as a form of exercise which resulted in a loss of 10 pounds along with a diabetic diet. *Id.* During his check up in April 2013, the ALJ noted that the records further showed that musculoskeletal exam was normal except for limited flexion, that his PTSD was stable, his sleep was controlled with a CPAP machine, his arthritic pain, sensory hearing loss glaucoma and cataracts were controlled and normal. *Id.*

The ALJ continued with his exhaustive analysis of the medical records. He also noted that the MRI in September 2013 revealed moderated approximately one-third anterior compression at the L1 with no progression since the earlier exam of December 2010. *Id.* The ALJ also noted the presences of osteophytes at the L1 and the lower thoracic region but body height was well maintained from L2-L5 with a finding of "moderate chronic wedge deformity at L1 without significant change from the prior exam." *Id.* at Tr. 22. The ALJ even summarized the medical records for the period after his date of last insured including the Disability Determination Services reviewing psychologist and physician, who found insufficient evidence of a severe mental or physical impairment. *Id.* at Tr. 22-25.

The ALJ concluded that a review of the whole record indicates that Jackson had several severe impairments, including diabetes, degenerative dis disease of the lumbar spine, mood disorder and PTSD. *Id.* at Tr. 25. He found that there are more than minimal limitations in his ability to perform basic work activities but that there was nothing in his pre-Date Last Insured record to support any greater limitations than assessed above and, further, that there was no contrary acceptable medical source opinion. *Id.*

In considering Jackson contention that his condition had not improved without the aid of three narcotic medications, the Court notes that the medical upon which he relies are after the date he was last insured for disability benefits.  By way of example, the very medical record he cited is dated October 16, 2013 and the date last insured was September 30, 2013. R. Doc. 8, p. 5 (citing R. Doc. 7-10, Tr. 649-654).

In contrast a review of the medical record up to the date of last insured shows  in August 2013 he received relief from an epidural steroid injection for about two weeks which allowed him to decrease his use of Morphine to 15 mg. R. Doc. 7-10, Tr. 677.  He also indicated that he used Oxycodone in the afternoon.  *Id.*  He reported that his pain level was 4/10. *Id*. at 682.

The records show further that a month earlier he had reported that his pain had improved and that his pain level was 0/10. *Id.* at. Tr. 683.  The records of June 25, 2013 indicates that Jackson's pain was well managed although on this visit his blood sugar was high.  *Id.* at Tr. 701.

To the degree that Jackson contends that the ALJ failed to consider the side effects of the medication, the record indicates that he did not report any side effects to any of the medications when questioned.   R. Doc.  7-6, Tr. 186. During the administrative hearing, Jackson complained that the medication taken in connection with his depression worsened his sleep apnea and had a negative effect on his sex drive, self-motivation, and self-pride. R. Doc. 7-2, 40. The ALJ also noted that Jackson was taking Morphine and Percocet for pain and that the use of Percocet dries out his mouth and he contends he also was "spitting teeth." *Id.* at Tr. 20.

Additionally, the court notes that the ALJ considered Jackson's daily activities and concluded that they were inconsistent with his suggestion of disability.  The ALJ noted that Jackson attend community college at times from 2012 through 2014 after the date of last insured. *Id.* at Tr. 25. The ALJ noted that Jackson worked for days in January 2008 as a movie extra. *Id.* at Tr. 19.  The ALJ

7

noted that Jackson is limited in his ability to swim during the summer and he stopped bank fishing a few years ago. *Id.*

According to the ALJ Jackson continues to target shoot once per month in the back yard. *Id.* The ALJ noted that in 2012-2013 he went to school online and at a community college for one year and half. *Id.* The ALJ noted that Jackson started machine shop classes but had difficulty standing. *Id.* It was noted that he swims in his back yard which does not stress his back, he can lift a gallon of milk; he drives 1-2 times per week, he can walk around his house about ½ block. *Id.*

The ALJ thereafter concluded that Jackson had medically determinable impairments which could cause the symptoms but that Jackson's statements regarding intensity, persistence and limiting effects of the symptoms were not sufficient to establish disability. *Id.* at Tr. 20. The ALJ also noted that after the date of last insured that Jackson's condition worsened. *Id.* After considering the ALJ's opinion and the record, the Court finds that that the residual functional capacity assessment is based upon substantial evidence.

**V.     Whether the ALJ decision where he accorded no substantial weight to Jackson's VA disability rating?**

Jackson contends that the ALJ erred when he declined to give "great weight" to his VA disability rating and instead gave the rating "no significant weight." R. Doc. 8, p. 6. Jackson acknowledged that that in certain circumstances that it is proper to give less than great weight to a VA disability rating but that this case is different because the ALJ misunderstood how the VA ratings worked. *Id.*

The Commissioner contends that the ALJ is free to disagree with a VA rating when he considers the underlying evidence and substantial evidence supports his decision. R. Doc. 11, p. 8. The Commissioner contends that Jackson misstated the ALJ's discussion of the VA rating. *Id.*

A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. *See Loza v. Apfel,* 219 F.3d 378, 394-95 (5th Cir. 2000); *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir. 1981). The Fifth Circuit in *Rodriguez* and its progeny has noted that it sometimes referred to a VA disability determination as being entitled to "great weight," but it also noted that the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. *See Rodriguez,* 640 F.2d at 686. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give great weight to a VA disability determination if they adequately explain the valid reasons for not doing so. In *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001)*,* the ALJ considered a VA determination of permanent and total disability, but he gave it diminished weight. His decision was affirmed because he gave specific reasons for affording the diminished weight.

In this case there is evidence that Jackson was deemed 100% disabled by the VA. The ALJ correctly noted in his opinion that the VA disability system and the Social Security Administration disability system are different. R. Doc. 7-2, Tr. 25. He noted that he is not required to reach the same conclusion and proceeded to note that the evidence as a whole regarding Jackson's actual functioning and the overall objective medical evidence do not support a 100% disabled finding under the Social Security criteria. *Id.* The ALJ noted that the highest disability rating by the VA was for sleep apnea syndromes at 50%, but the ALJ also noted that Jackson indicated that he sleeps better at night just having to get up to go to the bathroom when he used the prescribed CPAP machine. *Id.* The ALJ further noted the percentage of disability connected with ailments and 10% each was associated with intervertebral syndrome and tinnitus, 30% each for major depressive disorder and inflammation of

9

the median nerve each, 20% each for diabetes and superficial scars. *Id.* The ALJ gave valid reasons for not assigning significant weight to the VA rating.

There is further no evidence presented indicating that the decision to assign little weight to the VA rating affected his substantial rights as provided for in circuit law. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Therefore, the ALJ's decision was based on substantial evidence.

## VI.   Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Michael D. Jackson's claim for Disability Insurance Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 29th day of March 2017

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**